IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GROOMS HAULING, LLC, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | NO. 18-5405 |
| CORPORAL LOUIS ROBINSON, et al., | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

In this action,[1] Plaintiffs Grooms Hauling, LLC ("Grooms Hauling"), Henry Grooms ("Grooms"), and Cynthia Peterkin ("Peterkin") (collectively, "Plaintiffs") have asserted the following claims against Defendants Louis Robinson ("Robinson"), Patrick Fetterman ("Fetterman") and William McCardle ("McCardle") (collectively, "Defendants")[2]: an equal protection violation based on race, Am. Compl. Count I; race discrimination in violation of 42 U.S.C. § 1983, id. Count III; and a conspiracy to discriminate against Plaintiffs in violation of 42 U.S.C. § 1985, id. Count IV.[3] Presently before the Court is Defendants' Motion for Summary Judgment (Doc. No. 27). For the reasons discussed below, Defendants' Motion will be granted.[4]

---

[1] In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. See Doc. Nos. 13, 15.

[2] Robinson, Fetterman, and McCardle are, respectively, a Corporal with the Pennsylvania State Police ("PSP"), a retired PSP Trooper, and a civilian PSP Motor Carrier Enforcement Officer. Defs.' Br. (Doc. No. 27) at 2 & Ex. 4, at 7, 15; see Am. Compl. (Doc. No. 11) ¶¶ 6-8.

[3] Plaintiffs have withdrawn Counts II and V of the Amended Complaint. Pls.' Br. (Doc. No. 34-1) at 10. Accordingly, those counts are dismissed with prejudice.

[4] Along with the named Defendants, Plaintiffs have asserted claims against some unspecified John Doe Defendants. Am. Compl. ¶ 9. However, they have not attempted to amend their

(Footnote continued on next page)

**I.     FACTUAL BAKGROUND**

Plaintiffs' claims arise out of three incidents in which one or more of the Defendants issued citations to Plaintiffs on the ground that the window tinting of the Grooms Hauling dump trucks violated federal and Pennsylvania regulations that limit the extent of tinting of windows on commercial vehicles. Pennsylvania has adopted the federal standard for the extent of permissible tinting of vehicle windows. 67 Pa. Code § 229.14(7). Under that standard, window tinting is permitted so long as "the parallel luminous transmittance through the colored or tinted glazing is not less than 70 percent of the light at normal incidence." 49 C.F.R. § 393.60(d). In other words, window tinting is required to allow "70 percent of the light contacting the window [to] pass through the window." Defs.' Br. Ex. 2 (PennDot Fact Sheet Vehicle Window Tint).[5]

The first incident at issue occurred on June 15, 2017 at the New Garden Weigh Station located near the Pennsylvania-Delaware border. Pls.' Statement of Facts (Doc. No. 34-2) ¶¶ 2-3 [hereinafter, "Pls.' Facts"]; Defs.' Br. at 3.[6] On that date, Fetterman directed McCardle to inspect the windows of a Grooms Hauling dump truck driven by Grooms, using a tint meter to determine whether it had darker tinting on its windows than is permitted under federal and

---

Complaint to name any additional individuals as defendants. Because the Court will grant summary judgment as to the entire action, that ruling also will dispose of Plaintiffs' claims against the John Doe Defendants.

[5]   The parties have stipulated that less than 70 percent of light passed through the Plaintiffs' tinted windows on the dates the various tickets in question were issued. Defs.' Br. Ex. 1. On those dates, the amount of light passing through Plaintiffs' tinted windows was measured at only 17-20 percent. See id. Exs. 5-8 (citations).

[6]   Defendants' Statement of Undisputed Facts is incorporated into their brief in support of summary judgment. Defs.' Br. at 2-5. Plaintiffs' Statement of Facts appears as Exhibit 2 to their brief. Pls.' Br. Ex. 2.

Pennsylvania law. See Pls.' Facts ¶ 12; Defs.' Br. at 3. Fetterman testified that he selected Grooms truck for further inspection "because of the window tint. You could not see the driver." Defs.' Br. Ex. 9, at 18-19.

Plaintiffs allege that, during the June 15, 2017 incident, Fetterman accused Grooms of a variety of inspection violations and was rude and disparaging during their interaction. See Pls.' Facts ¶¶ 4-11. Grooms further maintains that Fetterman "told me as a black man there's no way I can own two dump trucks, as a black man you must be selling drugs in my state." Id. ¶ 11. Plaintiffs also contend that a medical waiver issued by the State of Delaware to Peterkin[7] permitted Peterkin, and, therefore, Grooms Hauling, to have a heavier degree of tint than the federal and Pennsylvania regulations mandate. Pls.' Br. at 6; Defs.' Br. Ex. 12, at 3 (medical waiver).

McCardle issued a citation to Grooms for violation of the applicable window-tinting regulations. See Pls.' Facts ¶ 12; Defs.' Br. at 3 & Ex. 5. In a document entitled "Traffic Citation Adjudication," in the portion titled "officer's notes," McCardle recorded that Grooms was "very agitated and argumentative throughout stop, since he was singled out for having tinted windows on a brand new truck, also was stopped for a level 2 inspection in Delaware on 06/09/17 and no violations were listed o[n] tint." Defs.' Br. Ex. 5, at 3. That document also reflects that Grooms Hauling pled guilty to that violation. Id. Grooms testified at deposition that he caused Grooms Hauling to do so because an officer had pointed out to him that he did not

---

[7] No such medical waiver was issued to Grooms.

3

have with him a document to support his claim that his window tinting was lawful due to a medical waiver.[8] Pls.' Br. Ex. A, at 12-13.

The second incident occurred on June 23, 2017 when Fetterman stopped Grooms driving a Grooms Hauling truck in Lancaster County, Pennsylvania. Pls.' Facts ¶ 15; Defs.' Br. at 3. Fetterman testified at deposition that he stopped the Grooms Hauling truck because he could see that its windows still had the heavy tinting for which it had been cited on June 15, 2017. Defs.' Br. Ex. 9, at 31. Fetterman cited Grooms for the window tinting. Pls.' Facts ¶ 17; Defs.' Br. at 3. Plaintiffs state that Grooms had with him at the time a window-tint waiver issued by the State of Delaware. Pls.' Facts ¶ 16. That representation is contradicted by Grooms' deposition testimony that he did not have a waiver certificate with him at the time he received the second ticket and that the waiver was issued on that same date. Pls.' Br. Ex. A, at 16-17; Defs.' Br. Ex. 12, at 3 (waiver application signed June 23, 2017).

The third incident occurred on October 5, 2017. Robinson pulled over a Grooms Hauling dump truck being driven by Peterkin and conducted an inspection of it. Pls.' Facts ¶¶ 19-20; Defs.' Br. at 4. In addition to again measuring the window tinting and finding it violated federal and Pennsylvania law, Robinson determined that the truck had a defective brake-warning device

---

[8] In their Statement of Facts, Plaintiffs assert that they appeared in court to challenge the June 15, 2017 citation and that "[t]he Judge determined that there was a valid medical waiver issued by the State of Delaware for tinted windows on both trucks, but ordered Henry Grooms to pay the fine because he did not have the waiver documents in the trucks when he was cited on June 15, 2017." Pls.' Facts ¶ 14 (citing Pls.' Br. Ex. A, at 12). The deposition transcript Plaintiffs cited for this statement is Grooms' testimony that he pled guilty to the citation. Pls.' Br. Ex. 5, at 3. The transcript of the hearing before a magisterial district judge attached to Plaintiffs' brief reflects that the tickets that Plaintiffs challenged in that hearing were issued on October 5, 2017. Pls.' Br. Ex. D, at 6. Plaintiffs have not presented any evidence to support their present Statement of Facts on this point. Plaintiffs' representation, therefore, is inaccurate.

4

and low air-warning light. Defs.' Br. at 4 & Ex. 7. Robinson issued Peterkin a citation for the window-tinting violation, but did not cite her for the defective warning lights. Id. at 4-5.

At approximately the same time on October 5, 2017, McCardle stopped Grooms, who was again driving his Grooms Hauling truck with the same window tinting for which he had previously been cited. Pls.' Facts ¶¶ 19-20, 22, 24; Defs.' Br. at 4. McCardle issued citations to Grooms for the tinted windows and for an unsecured fire extinguisher. Pls.' Facts ¶ 24; Defs.' Br. Exs. 7, 8. On this occasion, one of the two Grooms Hauling trucks carried a medical waiver certificate issued by the State of Delaware authorizing the dark tinting on the truck's windows. Defs.' Br. at 4. The waiver stated on its face that "I understand that this waiver is only valid for the State of Delaware and must be kept in the vehicle." Id. at 4 & Ex. 12.

An additional incident occurred on July 24, 2018, when two officers who are not parties to this case stopped both Grooms and Peterkin and again issued them citations for window-tinting violations on the Grooms Hauling trucks.[9] Pls.' Facts ¶ 29; Pls.' Br. Ex. E.

On November 20, 2017, Plaintiffs challenged the October 5, 2017 tickets in a Lancaster County magisterial district court. Pls.' Br. Ex. D (hearing transcript). The magisterial district court found Plaintiffs not guilty on the citations. Id. Ex. D, at 54-58. At the conclusion of the

---

[9] Plaintiffs' representation that the July 24, 2018 citations were issued "after the filing of this lawsuit and after a state magisterial judge held Plaintiffs were being held to differential treatment," Pls.' Facts ¶ 29, is inaccurate. This action was filed on December 13, 2018. Doc. No. 1. In addition, the magisterial district judge declined to find Plaintiffs guilty on the citations because he expressed "reasonable doubt" regarding whether a waiver issued in Delaware would satisfy Pennsylvania's regulations. See Pls.' Br. Ex. D, at 54-55, 58. He did not accept Plaintiffs' argument that they were being treated differently than Pennsylvania drivers in violation of the Commerce Clause of the United States Constitution, see id. at 36-38, 50-51, and he most certainly did not rule that they were being "held to differential treatment" based on race.

5

hearing, Robinson cautioned Grooms that the court's ruling only had force within the magisterial district court's jurisdiction and that he could be ticketed in other jurisdictions. Id. Ex. D, at 56.

## II.     SUMMARY JUDGMENT STANDARD

Under the well-established summary judgment standard, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Williams v. Wells Fargo Bank, No. 14-2345, 2015 WL 1573745, at *3 (E.D. Pa. Apr. 9, 2015) (quoting Wright v. Corning, 679 F.3d 101, 105 (3d Cir. 2012)).

> [T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his or] her case with respect to which [he or] she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"By its very terms, this standard [that there be no genuine issue as to any material fact] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A material fact is one that "might affect the outcome of the suit under the governing law." Id. at 248.

6

When ruling on a motion for summary judgment, the court shall consider facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006). To prevail on summary judgment, however, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-moving party].'" Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013) (quoting Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)); see also Anderson, 477 U.S. at 252.

## III. DISCUSSION

### A. Plaintiffs' Equal Protection Claims Are Meritless

In Count I of their Amended Complaint, Plaintiffs contend that Defendants violated their right to equal protection by discriminating against them based on race. Am. Compl., Count I. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To establish a claim for an equal protection violation, Plaintiffs must prove that they received treatment different from that received by others who were similarly situated, but were not members of a protected class and that the discrimination was purposeful. Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992); Lawson v. City of Coatesville, 42 F. Supp. 3d 664, 675 (E.D. Pa. 2014).

Although it is styled as an equal protection claim, the gravamen of Count I is that the Defendants selectively enforced the law regarding window tinting against the Plaintiffs based on racial profiling. See Am. Compl. ¶¶ 64-68; Pls.' Br. at 4. "'[I]n the [racial] profiling context,

7

[the plaintiff is] required to prove that the actions of . . . officials (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose.'" Lawson, 42 F. Supp. 3d at 675 (quoting Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002)). "'To prove discriminatory effect, [the plaintiff must] show that [he or she] is a member of a protected class and that [he or she] was treated differently from similarly[-]situated individuals in an unprotected class.'" Id. Here, Plaintiffs have not met that standard. It is undisputed that, as African Americans, Grooms and Peterkin are members of a protected class. They have failed, however, to present any evidence that they were treated differently from Caucasian truck drivers with respect to the enforcement of the federal and Pennsylvania limitations on window tinting. In the absence of evidence that Grooms and Peterkin were treated differently from similarly-situated individuals who were not members of a protected class, their equal protection claim fails. See Hall v. Zickefoose, 448 F. App'x 184, 187 (3d Cir. 2011) (District court properly denied equal protection claim because plaintiff failed to show that other similarly-situated persons were treated differently); Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 196-97 (3d Cir. 2009) (plaintiff who failed to meet his burden to prove that he received different treatment than others who were not members of a protected class was subject to summary judgment).

      **B.**     **Plaintiffs' Section 1983 Claim is Baseless**

In order to establish a claim under 42 U.S.C. § 1983, "a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." Elmore v. Cleary, 399 F.3d 279, 281 (3d

Cir. 2005). In the absence of direct evidence of discrimination,[10] § 1983 claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Moussa v. Pa. Dep't of Public Welfare, 413 F. App'x 484, 486 (3d Cir. 2011). "Under that framework, if a plaintiff successfully establishes a prima facie case of discrimination, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its action. The plaintiff must then respond by showing that the defendant's proffered reason was pretextual." Id. (alterations and internal quotation marks omitted) (quoting Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007)).

Plaintiffs allege that Defendants discriminated against them in enforcing the federal and Pennsylvania window-tinting standards by "targeting and harassing" them because of racial animus. Pls.' Facts ¶ 28. Thus, their § 1983 claim is based on alleged selective enforcement. See McCann v. Winslow Twp., No. 06-3189(NLH), 2007 WL 4556964, at *9 (D.N.J. Dec. 20, 2007), aff'd, 299 F. App'x 149 (3d Cir. 2008) (equal protection claim alleging that traffic stops were motivated by race is a claim of selective enforcement). Discriminatory enforcement of a facially-valid law violates the right to equal protection. Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005). Where the plaintiff cannot present direct evidence that discriminatory animus was the cause of the challenged action, the plaintiff can establish a selective-enforcement claim by demonstrating: "(1) that he [or she] was treated differently from other

---

[10] Direct evidence sufficient to establish a prima facie case of discrimination is evidence that "is 'so revealing of discriminatory animus that it is not necessary to rely on any presumption' to conclude that unlawful discrimination existed," Alers v. City of Philadelphia, 919 F. Supp. 3d 528, 556 (E.D. Pa. 2013) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 778-79 (3d Cir. 1994), such as "statements by the employer to the employee that s/he was being fired because of age," Maxfield v. Sinclair Int'l, 766 F.2d 788, 791 (3d Cir. 1985). Plaintiffs do not allege that any of the Defendants stated that the reason they were enforcing the window-tinting regulations against them was because of their race.

9

similarly[-]situated individuals; and (2) that this selective treatment was based on an unjustifiable standard, such as race, religion, some other arbitrary factor or to prevent the exercise of a fundamental right." Dombrosky v. Stewart, 555 F. App'x 195, 197 (3d Cir. 2014). Plaintiffs' claim meets neither of those two requirements.

First, as discussed supra in Section III(A), Plaintiffs have not even attempted to show that Defendants did not require other similarly-situated drivers of commercial vehicles to comply with the federal and Pennsylvania window-tinting regulations. Indeed, the fact that they received citations for unlawful window tinting from each of the three Defendants and also received citations from two other non-defendant officers on July 24, 2018, Pls.' Facts ¶ 29, suggests that the officers regularly enforce those regulations.

Second, Plaintiffs also have failed to establish a prima facie case of discriminatory intent. The sole evidence on which Plaintiffs base their assertion that Defendants acted out of racial animus is Grooms' testimony that Fetterman made a racist remark to him to the effect that a black man could not own two trucks without doing something illegal. See Pls.' Br. at 4. If, as must be accepted for summary judgment purposes, Fetterman made such a statement, it would be reprehensible. However, it is not a sufficient basis on which to conclude that the Defendants chose to ticket Grooms for his window-tinting violations out of racial animus. A single "stray" racist statement is an insufficient basis on which to establish that a defendant acted out of discriminatory animus. Jackson-Gilmore v. Dixon, No. 04-03759, 2005 WL 3110991, at *14 (E.D. Pa. Nov. 18, 2005) (officer's threat to take plaintiff's "black ass to jail" was a stray comment insufficient to raise a genuine issue of material fact regarding whether the officer acted out of discriminatory intent); see also Kim-Foraker v. Allstate Ins. Co., 834 F. Supp. 2d 267, 277 (E.D. Pa. 2011) (supervisor's stray remarks regarding Koreans were unrelated to the decision to

10

terminate plaintiff's employment and, therefore, did not establish discriminatory intent). Such remarks are insufficient unless the plaintiff can establish a link between the remarks and the allegedly discriminatory conduct. Angellini v. United States Facilities, Inc., No. 17-4133, 2018 WL 3155915, at *6 (E.D. Pa. June 27, 2018). Here, Plaintiffs have not presented any evidence that Fetterman's alleged racist comment was linked to any of the Defendants' decisions to issue citations for their continuing violations of federal and Pennsylvania law.

The only one of the three incidents at issue in which any Defendant allegedly made a racist comment was the first incident at the weigh station on June 15, 2017. The only officer who allegedly made any such statement was Fetterman. See Pls.' Facts ¶ 11. It is undisputed that, on June 15, 2017, the officers were conducting inspections of commercial vehicles at an inspection station. The uncontradicted testimony is that, if Fetterman made the alleged remark, he did so after he had instructed McCardle to inspect Grooms' vehicle because the window tinting was so dark that he could not see the driver through it. Defs.' Br. Ex. 9, at 15-16. Plaintiffs do not dispute that McCardle tested Grooms' truck's windows and found that they permitted only 17 percent of light to pass through them rather than the 70 percent required by federal and Pennsylvania regulations. Defs.' Br. Ex. 1 (stipulation). On this record, Plaintiffs have failed to make even a prima-facie showing that any racial animus Fetterman may have harbored was a cause of the Defendants' decisions to cite Plaintiffs for their violations of the federal and Pennsylvania window-tinting regulations.

Thus, Plaintiffs have failed to satisfy either requirement of the selective-enforcement standard and consequently, their § 1983 claim is utterly lacking in merit.

### C. Plaintiffs' Claim that the Defendants Engaged in a Conspiracy to Target Them Based on Their Race Cannot Escape Summary Judgment

To survive summary judgment, a plaintiff alleging a conspiracy to deprive him or her of equal protection in violation of 42 U.S.C. § 1985, must set forth sufficient facts that would allow a jury to find "(1) a conspiracy; (2) motivated by a racial or class[-]based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." Lawson, 42 F. Supp. 3d at 682 (quoting Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997)). Plaintiffs' conspiracy claim fails to meet those requirements.

"'[A] conspiracy claim based upon § 1985(3) requires a *clear showing* of invidious, purposeful and intentional discrimination between classes or individuals.'" Jackson-Gilmore, 2005 WL 3110991, at *14 (emphasis in original) (quoting Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir. 1972)). It also requires evidence that at least two people have conspired to deprive the plaintiff of his or her civil rights. Lawson, 42 F. Supp. 3d at 683 n.14. As discussed supra in Section III(B), Plaintiffs' evidence regarding alleged discriminatory intent fails to establish, even as to Fetterman, that the Defendants decided to ticket them out of a racially-discriminatory animus. Plaintiffs also have failed to offer any evidence of an agreement among any of the Defendants to deprive them of their civil rights other than the fact that officers issued citations to them for the overly-tinted windows on a number of occasions. Given that the Defendants' job was to enforce the requirements of the federal and Pennsylvania regulations governing commercial vehicles, including the window-tinting limitation, the fact that the three Defendants and two other non-party officers issued citations to Plaintiffs, who remained in open defiance of that limitation, hardly proves that the officers acted in furtherance of a conspiracy to deprive

Plaintiffs of their civil rights out of discriminatory animus.[11]

Nor is the alleged comment by Fetterman evidence of a conspiracy among the Defendants. See Lawson, 42 F. Supp. 3d at 683 n.14 (even if one officer's comment demonstrated discriminatory intent, that is not evidence that other officers shared that intent or conspired to discriminate against a plaintiff); Jackson-Gilmore, 2005 WL 3110991, at *14 (granting summary judgment on a § 1985 claim because a single discriminatory comment by one officer did not create a genuine issue of material fact as to whether other officers shared that discriminatory animus). "[A] single officer's use of racial epithets can be viewed, at most, as evidence of individual discriminatory animus on the part of the officer and without any evidence for a jury to find an agreement or concert of action necessary to constitute a conspiracy, [a] plaintiff's claim under § 1985 must fail." Adegbuji v. Middlesex Cnty., No. 03CV-1757 PGS, 2006 WL 2806289, at *10 (D.N.J. Sept. 28, 2006) (citing Armstrong v. Borie, 494 F. Supp. 3d 902, 906 (E.D. Pa. 1980)).

Moreover, Plaintiffs have failed to meet the requirement to establish that they were deprived of any right or privilege of a citizen of the United States. There is no right to operate a commercial vehicle in Pennsylvania in violation of federal and Pennsylvania law. Plaintiffs assert that "[t]his case is not about window tinting. This case is about pulling over African Americans and giving violations to African Americans based on their race." Pls.' Br. at 8. However, as discussed supra in Section III(A), Plaintiffs have not provided any evidence to show

---

[11] As discussed in Section III(D) infra, the fact that a single magisterial district judge declined to find Plaintiffs guilty on certain citations for window-tinting violations did not strike down the window-tinting law or authorize Plaintiffs to continue to flout that law. Thus, the fact that Defendants continued to enforce that law in counties outside the jurisdiction of the magisterial district judge despite that judge's failure to enforce the citations is not, in itself, evidence of discriminatory intent.

13

that Defendants selectively prosecuted them because of their race. Without such evidence, their mere allegation that Defendants conspired against them because of their race is insufficient to withstand summary judgment. See McCann, 2007 WL 4556964, at *3 ("a party opposing summary judgment must do more than just rest upon mere allegations").

      **D.**     **Defendants Are Protected by Qualified Immunity**

Defendants assert that their conduct is protected by qualified immunity. Defs.' Br. at 15-16. Under the doctrine of qualified immunity, law enforcement officers, like other public officials performing discretionary duties within the scope of their employment, are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "In considering whether qualified immunity attaches, courts perform a two-pronged analysis to determine: (1) 'whether the facts that [the] plaintiff has alleged . . . make out a violation of a constitutional right,' and (2) 'whether the right at issue was "clearly established" at the time of [the] defendant's alleged misconduct.'" Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017) (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)). In determining whether a police officer is entitled to qualified immunity, both the existence of a clearly-established right and the objective reasonableness of the officer's actions are questions of law for the court to decide, but any disputed issues of historical fact relevant to the court's determination must be submitted to the jury. Mantz v. Chain, 239 F. Supp. 2d 486, 495 (D.N.J. 2002) (citing Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002)). The test of the officer's conduct for qualified immunity purposes is not a subjective one, but is a question of the objective reasonableness of the allegedly discriminatory conduct. Harlow, 457 U.S. at 815-18. For this reason, "[a]n officer's subjective intent in carrying out the challenged action is immaterial to a

14

qualified immunity analysis." Martin v. Lakewood Police Dep't, 266 F. App'x 173, 177 (3d Cir. 2008). "Even if the officers issued the citations to [the plaintiff] for improper motives, such evidence is simply irrelevant to a qualified immunity defense." Id. (internal quotation marks omitted).

The evidence in this case creates no genuine issue of material fact regarding whether Defendants met either prong of the qualified-immunity standard. The evidence Plaintiffs have presented does not establish that any constitutional right of theirs has been violated. Plaintiffs could only show that the Defendants violated their rights by enforcing a federal or Pennsylvania law against them if they could show selective enforcement. See Bradley v. United States, 299 F.3d 197, 205-06 (3d Cir. 2002); Lawson, 42 F. Supp. 3d at 675. Plaintiffs have not made any effort to show that any other similarly-situated drivers of commercial vehicles were treated differently from them.

Additionally, Plaintiffs have failed to show that repeatedly ticketing a truck driver who continues to drive in Pennsylvania in flagrant violation of the applicable regulations violated any right that was then—or is now—a violation of clearly-established law. "Officials demonstrate they are entitled to qualified immunity . . . if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly[-]established law, that their conduct comported with recognized legal standards." E.D. v. Sharkey, 928 F.3d 299, 306 (3d Cir. 2019). That standard imposes liability only if, at the time the action complained of was taken, the legal principle the defendant is alleged to have violated "'clearly prohibit[ed] the officer's conduct in the particular circumstances before him [or her]. The rule's contours must be so well defined that it is clear to a reasonable officer that his [or her] conduct was unlawful in the situation he [or she] confronted.'" Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018)

15

(internal quotation marks and citation omitted) (quoting District of Columbia v. Wesby, ___ U.S.___, 138 S. Ct. 577, 590 (2018)). "The rule must be 'settled law,' . . . which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority' . . . It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. . . . Otherwise, the rule is not one that 'every reasonable official' would know." Wesby, 138 S. Ct. at 589-90 (internal citations omitted).

Here, Plaintiffs argue that the fact that a single magisterial district judge in a single district of a single county declined to enforce certain window-tinting citations against them establishes as a matter of law that Peterkin's Delaware medical waiver of the rules relating to window tinting is valid in Pennsylvania. See Pls.' Br. at 6, 10. They claim that the decision not to convict them on a particular citation allows them to continue to drive their trucks in Pennsylvania, statewide, in violation of the federal and Pennsylvania window-tinting limitation. Plaintiffs have offered no precedent of any kind to support that extraordinary proposition. Indeed, a Pennsylvania magisterial district judge's decision is subject to de novo review by a Court of Common Pleas. See Indep. Tech. Servs. v. Campo's Express, Inc., 812 A.2d 1238, 1240 (Pa. Super. Ct. 2002); see also In re Alberts, 381 B.R. 171, 179 (W.D. Pa. 2008). "[T]he Pennsylvania Superior Court has indicated that upon the perfection of a de novo appeal, Rule 1007 of the Pennsylvania Rules of Civil Procedure for Magisterial District Judges has the effect of extinguishing and nullifying the underlying judgment." In re Alberts, 381 B.R. at 19 (citing Indep. Tech. Servs., 812 A.2d at 1240 and Anderson v. Centennial Homes, Inc., 594 A.2d 737, 740 (Pa. Super. Ct. 1991)). Thus, a magisterial district judge's decision is not even binding precedent in the case that judge decided.

16

Plaintiffs' position that they may continue to disregard the express terms of federal and Pennsylvania regulations statewide because of the ruling of a single magisterial district judge absolving them of a violation is entirely baseless. Their argument that they can hold state officers personally liable for enforcing federal and Pennsylvania safety regulations because of that single magisterial district judge's decision is even worse. Defendants are correct in asserting that Plaintiffs' contention that they may continue to flout the window-tinting regulations was not clearly-established law at the time they issued the citations in question and that it still is not clearly-established law as of this date. See Defs.' Br. at 15. While Plaintiffs' discontent with the fact that Pennsylvania and Delaware do not have reciprocity with respect to medical waivers of the window-tinting limitation[12] is understandable, the solution to that concern is not to hold individual officers personally liable for enforcing federal and Pennsylvania law. Thus, the Defendants are protected by qualified immunity against Plaintiffs' claims.

## IV. CONCLUSION

For the reasons discussed above, Defendants will be granted summary judgment as to all of Plaintiffs' claims in this action. An appropriate order follows.

Dated: January 23, 2020

                                BY THE COURT:

                                */s/ Marilyn Heffley*
                                MARILYN HEFFLEY
                                UNITED STATES MAGISTRATE JUDGE

---

[12] Robinson testified at the hearing on the citations in magisterial district court that Pennsylvania's window-tinting regulations' provision regarding medical waivers only allow colorless tinting so that Plaintiffs' "dark black" tinting could not have qualified for a medical waiver under Pennsylvania law. Pls.' Br. Ex. D, at 42, 44, 47.